# Exhibit 1




DANCER PERFORMANCE LEASE

NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. ANY NEGOTIATED CHANGES TO THIS CONTRACT SHOULD BE INITIALED BY BOTH PARTIES IN THE MARGINS DIRECTLY NEXT TO THE MODIFICATIONS. WE SUGGEST THAT BEFORE SIGNING THIS CONTRACT, YOU HAVE IT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE.

This Dancer Performance Lease (referred to as "Lease") is entered into by the "Club" and "Entertainer" for the leasing of certain portions of the "Premises." The "Club," the "Entertainer," and the "Premises" are identified on the last page of this Lease.

PURPOSE OF LEASE:

The Club operates a bar on the Premises, and Entertainer, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, desires to lease from the Club, jointly together with other similar entertainers and upon the terms contained in this Lease, the right to use certain areas of the Premises for activities related to the presentation of live dance entertainment to the adult public.

TERMS OF LEASE:

Club and Entertainer agree as follows:

1. Leasing of Premises. Entertainer leases from the Club the right during normal business hours to jointly, along with other entertainers, use the stage areas and certain other portions of the Premises designated by the Club for the performing of live clothed, semi-nude, and/or nude dance entertainment and related activities, upon the terms and conditions contained in this Lease. This Lease begins today, and ends on the earlier of: A) January 31, 2013; or B) a termination date as provided for in paragraph 18.

2. Club's Additional Obligations. In addition to leasing the Premises, the Club shall:

A. Provide to Entertainer, at the Club's expense, music for use on the Premises, lighting, and dressing room facilities;

B. Pay any and all copyright fees due relative to the music used on the Premises; and

C. Advertise the business in a commercially reasonable manner for the benefit of both Entertainer and the Club. This does not, however, prohibit Entertainer from advertising her services in any manner or fashion she so desires.

3. Subleasing. This Lease is acknowledged to be personal in nature. This means that Entertainer has no right to sublease or to assign any of her rights or obligations in this Lease to any other person without the express written consent of the Club. However, if Entertainer is unable to fulfill her contractual obligations during any scheduled set, Entertainer shall have the right to substitute the services of any licensed (if legally required) entertainer who has also entered into a Dancer Performance Lease with the Club. Any such substitution shall not, however, relieve Entertainer of the rent, lost rent charge and/or contract damage obligations as contained in this Lease if a substitute entertainer fails to pay any of those fees due as a result of the substitute's lease obligations.

4. Non-Exclusivity. Entertainer's obligations under this Lease are nonexclusive, meaning that Entertainer is free to perform her entertainment activities at other businesses or at locations other than at the Club's Premises.

5. Use of Premises. Entertainer agrees to:

A. Perform clothed, as well as semi-nude ("topless") or nude (whichever is permitted by law) dance entertainment at the Premises;

B. Obtain, keep in full force and effect, and have in her possession at all times while she is on the Premises and available for inspection as may be required by law, any and all required licenses and/or permits. The failure of Entertainer to have in her possession a required license and/or permit shall not relieve her of her rent obligations as provided for in this Lease;

C. Not violate any federal, state, or local laws or governmental regulations. Entertainer acknowledges, understands and agrees that any conduct by her which is in violation of any such laws or regulations is beyond the scope of her authority pursuant to this Lease, and constitutes a breach of the terms of this Lease;

D. Maintain accurate daily records of all income, including tips, earned while performing on the Premises, in accordance with all federal, state, and local taxation laws;

E. Become knowledgeable of all laws and governmental regulations that apply to Entertainer's conduct while on the Premises; and

F. Pay for any damages she causes to the Premises and/or to any of the Club's personal property, furniture, fixtures, inventory, stock and/or equipment.

6. Compliance with Rules. The Club shall have the right to impose such rules upon the use of the Premises by Entertainer as the Club deems necessary in order to ensure that: A) No damage to the Club's property occurs; B) the Premises are used in a safe fashion for the benefit of all entertainers, patrons, and others; and C) no violations of the law occur.

Entertainer agrees to comply with all such rules, as well as with all rules established by a majority vote of all entertainers under lease with the Club. No rule of such an informal tenants association shall, however, violate either this Lease or any rule established by the Club.

7. Nature of Performance. The Club has no right to direct or control the nature, content, character, manner or means of Entertainer's entertainment services or of her performances.

EXCEPT AS MAY IN WRITING BE SPECIFICALLY RELEASED, WAIVED OR TRANSFERRED. SO LONG AS THE RELATIONSHIP BETWEEN ENTERTAINER AND THE CLUB IS THAT OF LANDLORD AND TENANT, ENTERTAINER SHALL OWN AND RETAIN ALL INTELLECTUAL PROPERTY RIGHTS OF HER ENTERTAINMENT PERFORMANCES. INCLUDING BUT NOT LIMITED TO ALL COPYRIGHTS AND RIGHTS OF PUBLICITY. ALL OF THESE RIGHTS BECOME THE PROPERTY OF THE CLUB. HOWEVER. IF THE RELATIONSHIP IS EVER CHANGED TO THAT OF EMPLOYER AND EMPLOYEE.

8. Costumes. Entertainer shall supply all of her own costumes and wearing apparel, which must comply with all applicable laws. The Club shall not control in any way the choice of costumes and/or wearing apparel made by Entertainer.

9. Nature of Business. Entertainer understands: 1) That the nature of the business operated at the Premises is that of adult entertainment; 2) that she may be subjected to either full or partial nudity (primarily female) and explicit language; and 3) that she may be subjected to advances by customers, to depictions or portrayals of a sexual nature, and to similar types of behavior. Entertainer represents that she is not, and will not be, offended by such

conduct, depictions, portrayals, and language, and that she assumes any and all risks associated with being subjected to these matters.

10. Privacy. Entertainer and the Club acknowledge that privacy and personal safety are important concerns to Entertainer. Accordingly, the Club shall not knowingly disclose to any persons who are not associated with the Club, or to any governmental entity, department, or agency, either the legal name of the Entertainer, her address, or her telephone number, except upon prior written authorization of the Entertainer or as may be required by law.

11. Entertainment Fees. In consultation with entertainers who lease space on the Premises, the Club shall establish a fixed fee for the price of certain performances engaged in on the Premises (referred to as "Entertainment Fees"). Entertainer agrees not to charge a customer less than the fixed price for any such performance unless the Entertainer notifies the Club in writing of any charges to her customers of a lower amount. Nothing contained in this Lease, however, shall limit Entertainer from receiving "tips" and/or gratuities over-and-above the established price for such performances. THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE. RATHER. MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR OBTAINING THE SERVICE OF A PERSONAL ENTERTAINMENT PERFORMANCE.

12. Business Relationship of Parties.

A. The parties acknowledge that the business relationship created between

the Club and Entertainer is that of landlord and tenant for the joint and non-exclusive leasing of the Premises (meaning that other entertainers are also leasing the premises at the same time), and that this relationship is a material (meaning significant) part of this Lease. THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and agree that this Lease shall not be interpreted as creating an employer/employee relationship or any contract for employment. ENTERTAINER UNDERSTANDS THAT THE CLUB V _ NOT PAY HER ANY WAGE (WHETHER HOURLY OR OTHERWISE). OVERTIME PAY. EXPENSES. OR OTHER EMPLOYEE-RELATED BENEFITS.

B. The Club and Entertainer acknowledge that if the relationship between them was that of employer and employee, the Club would be required to collect, and would retain, all Entertainment Fees paid by customers to Entertainer - ENTERTAINER SPECIFICALLY ACKNOWLEDGES THAT IN THE CIRCUMSTANCE OF AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL ENTERTAINMENT FEES WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE CLUB. AND WOULD NOT BE THE PROPERTY OF ENTERTAINER. THE PARTIES

ACKNOWLEDGE THAT ENTERTAINER'S RIGHT TO OBTAIN AND KEEP ENTERTAINMENT FEES PURSUANT TO THIS LEASE IS SPECIFICALLY CONTINGENT AND CONDITIONED UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF LANDLORD AND TENANT.

Under an employment relationship, Entertainer would be paid on an hourly basis at a rate equal to the applicable minimum wage. All wage payments would be subject to all federal, state, and local tax withholding requirements. Entertainer would further be entitled to retain "tips" and/or gratuities - but not Entertainment Fees - that she may collect while performing on the Premises, although she will be required to pay 25% of her tips into a "tip pool" that would be distributed to non-dancer tipped employees.

The parties additionally acknowledge that were the relationship between them to be that of employer and employee, Entertainer's employment would be "at will" (meaning Entertainer could be fired at any time without

cause and without prior notice or warning), and that the Club would be entitled to control, among other things, Entertainer's: Work schedule and the hours of work; job responsibilities; physical presentation (such as make-up, hairstyle, etc.); costumes and other wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations and for other businesses. Entertainer hereby represents that she desires to be able to make all of these choices herself and without the control of the Club, and the Club and Entertainer agree by the terms of this Lease that all such decisions are exclusively reserved to the control of Entertainer.

ENTERTAINER FURTHER SPECIFICALLY REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS SUB-PARAGRAPH 12B. BUT, RATHER. DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS LEASE.

C. If any court, tribunal, or governmental agency determines, or if Entertainer at any time contends, claims, or asserts, that the relationship between the parties is something other than that of landlord/tenant and that Entertainer is then entitled to the payment of monies from the Club, all of the following shall apply:

i. In order to comply with applicable tax laws and to assure that the Club is not unjustly harmed and that Entertainer is not unjustly enriched by the parties having financially operated pursuant to the terms of this Lease, the Club and Entertainer agree that Entertainer shall surrender, reimburse and pay to the Club, all Entertainment Fees received by Entertainer at any time she performed on the Premises - all of which would otherwise have been collected and kept by the Club had they not been retained by Entertainer under the terms of this Lease - and shall immediately provide a full accounting to the Club of all tip income which she received during that time;

ii. Any Entertainment Fees that Entertainer refuses to return to the Club shall be deemed service charges to the customer and shall be accounted for by the Club as such. The Club shall then be entitled to full wage credit for all Entertainment Fees retained by Entertainer, and such withheld fees shall therefore constitute wages paid from the Club to Entertainer. In the event that Entertainer refuses to return Entertainment Fees to the Club, the Club shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income consistent with this subparagraph 12(C)(ii); and

iii. The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in subparagraph 12B.

D. If at any time Entertainer believes that, irrespective of the terms of this Lease, she is being treated as an employee by the Club or that her relationship with the Club is truly that of an employee, Entertainer shall immediately, but in no event later than three business days thereafter, provide notice to the Club in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(B) of this Lease and applicable law, and shall also within the same time period begin reporting all of her tip income to the Club on a daily basis; such tip reporting being required of all tipped employees of the Club under the terms of the Internal Revenue Code.

13. Taxes. Entertainer shall be exclusively responsible for, and shall pay, all federal, state, and local taxes and contributions imposed upon any income earned by Entertainer while performing on the Premises (including but not limited to income taxes and social security obligations).

14. Scheduling of Lease Dates. Entertainer shall select, at least one week in advance, any and all days that she desires to lease the Premises during the following week, and the Club shall make the leased portion of the Premises

available to Entertainer during those dates and times, subject only to space availability. Should Entertainer desire not to perform on the Premises at all during any given week, Entertainer shall give the Club notice of this at least one week in advance. Once scheduled, neither Entertainer nor the Club shall have the right to cancel or change any scheduled performance dates except as may be agreed to by Entertainer and the Club. For each day that Entertainer schedules herself to perform, Entertainer agrees to be on the Premises, available to perform, for a minimum number of consecutive hours as stated in the "SPECIFICATIONS" section on the last page of this Lease (one "set"). During those weeks that Entertainer desires to perform, Entertainer agrees to lease space at the Premises for at least the minimum number of sets per week as stated in the "SPECIFICATIONS" section of this Lease. Entertainer may be permitted to lease space on the Premises on days when she has not scheduled herself to perform, subject to space availability.

If Entertainer misses an entire scheduled set, Entertainer shall pay to the Club as a lost rent charge, a fee for each set missed as stated in the "SPECIFICATIONS" section of this Lease, which is to be paid by Entertainer to the Club no later than by the end of her next set. If Entertainer fails to timely commence a scheduled set, Entertainer shall pay to the Club as contract damages $8.00 for each one-half hour missed up to a maximum of the lost rent charge as stated in the "SPECIFICATIONS" section of this LEASE, which is to be paid by Entertainer to the Club no later than by the end of that set. All lost rent charges and contract damages stated in this Lease are established in view of the fact that it would be difficult to determine the exact lost rent or damage incurred as a result of certain breaches of the terms of this Lease.

15. Rent. Entertainer agrees to pay rent to the Club (referred to as "set rent") in amounts as stated in the "SPECIFICATIONS" section of this Lease. All set rent shall be paid immediately upon completion of any set.

16. Material Breach by Club. The Club materially breaches this Lease by:

A. Failing to provide to Entertainer the leased portion of the Premises on any day as scheduled by Entertainer;

B. Failing to maintain any and all required licenses and/or permits;

C. Failing to maintain in full force any and all leases and subleases with the owner of the Premises;

D. Failing to maintain in full force all utilities services for the Premises;

E. Willfully violating any federal, state, or local law or regulation in regard to the operation of the Club;

F. Violating any public health or safety rules or concerns; or

G. Failing to maintain the Premises in a safe and orderly manner.

The Club shall not be liable for any material breach as set forth in this paragraph 16 due to acts of God or to any other cause beyond the reasonable control of the Club.

17. Material Breach by Entertainer. Entertainer materially breaches this Lease by:

A. Failing to maintain any and all required licenses and/or permits;

B. Willfully violating any federal, state, or local law or regulation while on the Premises;

C. Failing to appear for a scheduled set on two or more occasions in any one calendar month;

D. Failing to pay any set rent when due;

E. Failing to timely pay any assessed lost rent charges or contract damages;

F. Claiming the business relationship with the Club as being other than that of a landlord and tenant; or

G. Violating any public health or safety rules or concerns.

18. Termination/Breach. Either party may terminate this Lease, without cause, upon thirty (30) days notice to the other party. Upon material breach, the non-breaching party may terminate this Lease upon twenty-four (24) hours notice to the other party, or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow Entertainer to perform on the Premises without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws, regulations, or public health or safety rules or concerns.

19. Severability. In the event that any term, paragraph, subparagraph, or portion of this Lease is declared to be illegal or unenforceable, this Lease shall, to the extent possible, be interpreted as if that provision was not a part of this Lease; it being the intent of the parties that any illegal or unenforceable portion of this Lease, to the extent possible, be severable from this Lease as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Entertainer and the Club is something other than that of landlord and tenant, the relationship between Entertainer and the Club shall be controlled by the provisions of subparagraphs 12C and 12B.

20. Governing Law. This Lease shall be interpreted pursuant to the laws of the State of Maryland.

21. Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs.

A. ANY CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AT THE CLUB, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (the "FAA")., AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT. THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THE ARBITRATOR SHALL PERMIT REASONABLE DISCOVERY, AND ALL PARTIES SHALL HAVE THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL, TO SUBPOENA WITNESSES IN ORDER TO COMPEL THEIR ATTENDANCE AT HEARINGS, AND TO CROSS-EXAMINE WITNESSES. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH RUDIMENTARY DUE PROCESS, AND THE ARBITRATOR'S DECISION SHALL BE IN WRITING AND SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. FOR ANY CLAIMS BASED UPON STATUTORY

PROTECTIONS, THE CLUB SHALL PAY ALL FEES CHARGED BY THE NEUTRAL ARBITRATOR. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THIS AGREEMENT TO ARBITRATE ANY AND ALL CLAIMS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B. ENTERTAINER AGREES THAT ALL CLAIMS BETWEEN HER AND THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THE CLAIMS OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WELL NOT PARTICIPATE IN

ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE CLUB. IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PROCEEDING, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF, ENTERTAINER SHALL WAIVE HER RIGHTS TO ANY SUCH MONETARY RECOVERY.

C. ANY JUDGMENT, ORDER, OR RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT PERMITTED BY APPLICABLE LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS AND REASONABLE ATTORNEY FEES TO THE PREVAILING PARTY.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE TERMINATION OF THIS LEASE.

BECAUSE OF LEGAL RESTRICTIONS, THE CLUB WILL NOT ENTER INTO A LEASE WITH AN ENTERTAINER WHO IS UNDER THE AGE OF /W 21 (CIRCLE ONE), AND THIS LEASE IS NULL AND VOID IF ENTERTAINER IS NOT OF SUCH AGE. ENTERTAINER SPECIFICALLY REPRESENTS THAT SHE IS OF THIS LAWFUL AGE OR OLDER, THAT SHE HAS PROVIDED APPROPRIATE IDENTIFICATION VERIFYING HER AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.

BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT SHE HAS RECEIVED A COPY OF, AND HAS FULLY READ, THIS LEASE; THAT SHE UNDERSTANDS, AND AGREES TO BE BOUND BY, ALL OF ITS TERMS; AND THAT SHE HAS BEEN PERMITTED TO ASK QUESTIONS REGARDING ITS CONTENTS AND HAS BEEN GIVEN THE OPPORTUNITY TO HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING ATTORNEYS AND ACCOUNTANTS.

"CLUB"

---

BY:---
[signature]

---
[printed name]

---
[position]

---
[club address]

---
[city,state,zip]

---
[date]

"ENTERTAINER"

REDACTED
[signature]

REDACTED
[printed name]

REDACTED
[stage name]

REDACTED
[address]

REDACTED
[city,state,zip]

---
[entertainer's license/permit number]

---
[entertainer's ID number]